

RECEIVED CP

8/12/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRIAN TRAINAUSKAS

SCANNED AT PON CC
EMAILED 8/12/21 (date)
BY ___ (intials)
37 (# of pages)

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Case No: _____
(To be supplied by the Clerk of this Court)

## 1:21-CV-04311

EDWARD JACOB
WILLIAM E. COX
LEONTA JACKSON

JUDGE GARY FEINERMAN
MAGISTRATE JUDGE M. DAVID WEISMAN
PC6
DIRECT

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

REQUEST JURY TRIAL ☒

CHECK ONE ONLY:

✓ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
**U.S. Code** (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331 U.S. Code** (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

**I.  Plaintiff(s):**

A.  Name: BRIAN TRAINAUSKAS

B.  List all aliases: N/A

C.  Prisoner identification number: Y10061

D.  Place of present confinement: PONTIAC Correctional CENTER

E.  Address: PO Box 99, PONTIAC, IL 61764

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.  Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.  Defendant: EDWARD JACOB

Title: ACTING ASSISTANT WARDEN OF OPERATIONS

Place of Employment: STATEVILLE Correctional CENTER

B.  Defendant: William E. Cox

Title: ASSISTANT WARDEN OF OPERATIONS

Place of Employment: PONTIAC Correctional CENTER

C.  Defendant: LEONTA JACKSON

Title: CHIEF ADMINISTRATION OFFICER (WARDEN)

Place of Employment: PONTIAC Correctional CENTER

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: TRAINAUSKAS VS. O'LEARY NO. 10 CV 7314

B. Approximate date of filing lawsuit: 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: SELF, BRIAN TRAINAUSKAS

D. List all defendants: MICHAEL O'LEARY, KIM ADAMS

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): FEDERAL - NORTHERN DISTRICT

F. Name of judge to whom case was assigned: UNSURE

G. Basic claim made: VIOLATION OF 1ST AMENDMENT RIGHTS

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): SETTLEMENT

I. Approximate date of disposition: 2011

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

III. CONTD.                    39

A. TRAINAUSKAS Vs. O'LEARY, et al. 14-CV-4437
B. 6/12/14
C. BRIAN TRAINAUSKAS
D. MICHAEL O'LEARY, DOREICE ALEXANDER, PAUL KAPAS
E. FEDERAL- NORTNERN DISTRICT
F. UNKNOWN
G. CRUEL AND UNUSUAL PUNISHMENT DUE TO SOLITARY
   CONFINEMENT
H. SETTLEMENT
I. 4/13/17


A. TRAINAUSKAS Vs. KIM ADAMS, et al. 15-CV-0820
B. 1/26/15
C. BRIAN TRAINAUSKAS
D. KIM ADAMS, MICHAEL O'LEARY
E. FEDERAL- NORTHERN DISTRICT
F. UNKNOWN
G. 1ST AMENDMENT VIOLATION
H. SETTLEMENT
I. 4/13/17

III. CONT'D          3b

A. TRAINAUSKAS VS. KAPAS, et al. 15-CV-9318
B. 12/7/15
C. BRIAN TRAINAUSKAS
D. PAUL KAPAS, BRIAN FINK
E. FEDERAL - NORTHERN DISTRICT
F. UNKNOWN
G. WILL COUNTY AUTHORITIES REQUESTED THAT ANY/All
PRIVILEDGED ATTORNEY-CLIENT PHONE CALLS AND VISITS
BE RECORDED AND PROVIDED TO WILL COUNTY STATES
ATTORNEY'S OFFICE PRIOR TO PLAINTIFF'S TRIAL
H. SETTLEMENT
I. 4/13/17


A. TRAINAUSKAS VS. FRALICKER, et al. 17-816-SMG
B. 7/17/17
C. BRIAN TRAINAUSKAS
D. BARTON FRALICKER, NATHAN McCARTNY, KENT BROOKMAN,
JACQUELINE LASHBROOK
E. FEDERAL - SOUTHERN DISTRICT
F. UNKNOWN
G. 8TH AND 14TH AMENDMENT VIOLATIONS
H. DISMISSED WITHOUT PREJUDICE DUE TO PLAINTIFF'S
ERROR. REFILED AS 18-CV-193-SPM-GCS
I. 2018

3b

III. CON'T'D                    3c

A. TRAINAUSKAS VS. FRALICKER, et al. 16-CV-193.-SPM-GCS
B. 2016 (EXACT DATE UNKNOWN)
C. BRIAN TRAINAUSKAS
D. BARTON FRALICKER, NATHAN McCARTHY, KENT BROOKMAN,
JACQUELINE LASHBROOK
E. FEDERAL. SOUTHERN DISTRICT
F. JUDGE GILBERT C. SISON
G. 8TH AND 14TH AMENDMENT VIOLATIONS
H. SETTLEMENT CONFERENCE 8/16/17
I. PENDING


A. TRAINAUSKAS VS. ILLINOIS DEPT. OF CORRECTIONS, 1:21-
CV-1050-JES
B. 5/2021
C. BRIAN TRAINAUSKAS
D. ILLINOIS DEPT. OF CORRECTIONS, WEXFORD HEALTH SOURCE',
RILIWAN OJELADE, NIKKI RAMBO, KELLY RENZI, DR. ANDREW
TILDEN, DR. BETSY O'BRIEN, LEONTA JACKSON
E. FEDERAL - CENTRAL DISTRICT
F. JUDGE SHADID
H. PENDING
G. REFUSAL TO TREAT PLAINTIFF'S OBJECTIVELY SERIOUS MEDICAL
CONDITIONS (BLOOD CANCER, BULGING DISCS, etc.)
I. PENDING

3c

III. CONT'D                3d

A. TRAINAUSKAS V. DALTON, et al (UNKNOWN)
B. 2018
C. BRIAN TRAINAUSKAS
D. JACOB DALTON, KENDRA WOLF, TERI KENNEDY
E. STATE COURT — MANDAMUS / COMMONLAW WRIT OF CERTIORARI
IN LIVINGSTON COUNTY
F. UNKNOWN
G. MANDAMUS / CERTIORARI TO CHALLENGE DISCIPLINARY HEARING
H. DISMISSED; APPEAL FILED AND LOST
I. 2020

A. TRAINAUSKAS V. COURT OF CLAIMS (UNKNOWN)
B. 2020
C. BRIAN TRAINAUSKAS
D. COURT OF CLAIMS
E. STATE COURT - MANDAMUS / WRIT OF CERTIORARI (SPRINGFIELD)
F. UNKNOWN
G. MANDAMUS / CERTIORARI TO CHALLENGE DUE PROCESS VIOLATION
WHEN COURT OF CLAIMS CHOSE TO NOT FOLLOW THEIR OWN RULES
H. DISMISSED
I. 2020

## IV. STATEMENT OF CLAIM

PLACES OF OCCURRENCES: STATEVILLE CORRECTIONAL CENTER ("STATEVILLE") AND PONTIAC CORRECTIONAL CENTER ("PONTIAC") WITHIN THE ILLINOIS DEPARTMENT OF CORRECTIONS ("IDOC").

DATES OF OCCURRENCES: 7/1/18 - CURRENT DATE

FEDERAL JURISDICTION:
JURISDICTION IS BASED ON 28 U.S.C. §1331, A CIVIL ACTION ARISING UNDER THE UNITED STATES CONSTITUTION OR FEDERAL LAW.

VENUE:
JURISDICTION AND VENUE IS PROPER IN THIS COURT PURSUANT TO 28 U.S.C. §1391 (2) AS A SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS GIVING RISE TO THE CLAIM OCCURRED IN THIS JUDICIAL DISTRICT

### NATURE OF THE ACTION

1. PLAINTIFF BRINGS THIS ACTION UNDER 42 U.S.C. §1983 AND THE CONSTITUTION OF THE UNITED STATES, SEEKING DAMAGES AND INJUNCTIVE RELIEF FOR PHYSICAL, CONSTITUTIONAL, AND PSYCHOLOGICAL

4

INJURIES HE SUSTAINED AND CONTINUES TO SUFFER FROM
WHEN DEFENDANTS JACOB, COX, AND JACKSON
("DEFENDANTS") IMPOSED AN ATYPICAL AND SIGNIFICANT
HARDSHIP UPON HIM, AS WELL AS INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS UPON HIM AND HIS FAMILY
WHEN THEY CONTINUALLY DENIED HIM VISITATION WITH
HIS loveD ones.

2. PLAINTIFF Also SEEKS DECLARATORY JUDGMENT, INJUNCTIVE
RELIEF, AND DAMAGES FROM THE DEFENDANTS FOR THEIR
CONTINUAL DENIAL OF PLAINTIFF'S STATE-CREATED
LIBERTY INTREST, AND DENIAL OF PLAINTIFF'S RIGHT TO
DUE PROCESS, AND HIS RIGHT TO BE FREE FROM CRVel
AND UNUSUAL PUNISHMENT.

3. DEFENDANTS, INDIVIDUALLY AND Collectively, HAVE
REMAINED DELIBERATELY INDIFFERENT TU PLAINTIFF'S
RIGHT TO THE MINIMAL CIVILIZED MEASURE OF LIFE'S
NECESSITIES, WHICH HAVE CAUSED SERIOUS AND
IRREPAIRABLE HARM TO PLAINTIFF AND HIS FAMILY.

## STATEMENT OF FACTS

4. PLAINTIFF HAS EXHAUSTED All ADMINISTRATIVE REMEDIES AVAILABLE TO HIM PRIOR TO BRINGING THIS COMPLAINT.

5. PLAINTIFF, AN IRISH CITIZEN, HAS BEEN A PRISONER IN "IDOC" SINCE 12/15/15 AND WAS SENTENCED TO A TERM OF IMPRISONMENT OF 70 YEARS.

6. AS AN IRISH CITIZEN, PLAINTIFF IS AFFORDED RIGHTS AND PROTECTIONS UNDER THE CONSTITUTION OF IRELAND.

7. PLAINTIFF WAS A RESIDENT AT "STATEVILLE" FROM APPROXIMATELY 11/1/17 - 6/21/18.

8. ON 6/21/18 PLAINTIFF WAS TRANSFERRED TO "PONTIAC."

9. SINCE PLAINTIFF'S TRANSFER TO PONTIAC THE DEFENDANTS HAVE CONTINUOUSLY DENIED PLAINTIFF All NON-CONTACT AND IN-PERSON VISITS WITH HIS WIFE SARAH VOLK.

10. UNTIL 4/14/21 THE DEFENDANTS HAVE CONTINUOUSLY DENIED PLAINTIFF All NON-CONTACT AND IN-PERSON VISITS WITH HIS MOTHER MARY TRAINAUSKAS, WHILE PLAINTIFF WAS HOUSED IN PONTIAC.

6

## COUNT I

PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN DEFENDANTS JACOB, COX AND JACKSON REVOKED PLAINTIFF'S VISITATION RIGHTS WITHOUT NOTICE, THEREBY DEPRIVING PLAINTIFF'S RIGHT TO APPEAL.

11. PLAINTIFF REPEATS THE ALLEGATIONS IN PARAGRAPHS 1 THROUGH 10 AS IF FULLY SET FORTH HEREIN.

12. SHORTLY AFTER PLAINTIFF ARRIVED AT PONTIAC HE SUBMITTED A VISITATION REQUEST FORM (DOC 0004), IN ACCORDANCE WITH DEPARTMENT RULE 525, WITH THE NAMES OF HIS WIFE, AND HIS MOTHER ON IT: SARAH VOIK (WIFE), MARY TRAINAUSKAS (MOTHER). All VISITATION TYPES FOR THEM WERE APPROVED BY PONTIAC'S WARDEN TERI KENNEDY.

13. PLAINTIFF SUBMITTED ADDITIONAL VISITATION REQUEST FORMS WITH MINOR CHANGES. EVERY TIME All VISITATION TYPES WERE APPROVED FOR SARAH AND MARY SUCH AS ON 5/30/19.

14. ON 5/3/21 WARDEN JACKSON, WHO REPLACED WARDEN KENNEDY, APPROVED All VISITATION TYPES FOR PLAINTIFF'S WIFE AND HIS MOTHER.

15. IN 2019 PLAINTIFF'S MOTHER MARY TRAINAUSKAS AND HIS WIFE SARAH VOLK DROVE TO PONTIAC TO VISIT PLAINTIFF. BOTH WERE TURNED AWAY AND TOLD THAT THEY WERE NOT ALLOWED TO SEE PLAINTIFF.

16. FURTHER ATTEMPTS WERE MADE BY MARY AND SARAH TO VISIT PLAINTIFF; AGAIN THEY WERE TURNED AWAY.

17. PLAINTIFF SUBMITTED GRIEVANCES REGARDING THIS ISSUE AND EXHAUSTED ALL ADMINISTRATIVE REMEDIES AVAILABLE TO HIM.

18. ON 9/1/2019 PLAINTIFF'S WIFE SARAH VOLK SCHEDULED A VIDEO VISIT WITH HIM FOR 9/22/19, WHICH WAS HELD AT 9:00 AM WITHOUT ISSUE OR PROBLEM.

19. SARAH VOLK THEN SCHEDULED ANOTHER VISIT WITH PLAINTIFF FOR 9/29/19 AND WAS AGAIN PROVIDED A CONFIRMATION NUMBER.

20. ON 9/26/19 SARAH VOLK RECEIVED A CANCELLATION NOTICE FOR HER VISIT WITH PLAINTIFF FOR 9/29/19.

21. ON 9/27/19 SARAH VOLK RECEIVED AN EMAIL FROM GTL, THE SERVICE PROVIDER FOR IDOC'S VIDEO VISITATIONS, WHICH STATED, "YOU HAVE A CURRENT STOP ORDER AT STATEVILLE CORRECTIONAL CENTER. THIS WILL NEED TO BE LIFTED BEFORE

8

Any FUTURE VIDEO VISITS. You will NEED TO WRITE THE WARDEN OF OPERATIONS AT STATEViLLE CORRECTIONAL CENTER TO GET THIS LiFTED."

22. PRIOR To 9/27/19 NEITHER PLAINTIFF, SARAH VOlK NOR MARY TRAINAUSKAS HAD BEEN NOTIFIED OR INFORMED OF ANY VISITATION STOP ORDER.

23. IT WAS GTL WHO EMAILED SARAH VOlK REGARDING THe STOP ORDER, NOT STATEViLle, IDOC, OR DEFENDANT JACOB.

24. ON 10/5/19 PLAINTIFF CONTACTED COUNSelor K. NARETTO TO INQUIRE ABOUT SAID STOP ORDER. NARETTO INFORMED PLAINTIFF THAT MARY TRAINAUSKAS Also HAD A STOP ORDER FROM STATEViLle.

25. ON 10/8/19 PLAINTIFF WROTE TO PONTIAC's RECORDS OFFICE FOR A COPY OF THiS STOP ORDER AND WAS TOld, "NOTHiNG IS FOUND IN YOUR MASTERFILE."

26. PLAINTIFF CONTACTED COUNSElor K. NARETTO ABOUT THese STOP ORDERS WHO STATED, "COUNSElOR REVIEWED OFFENDER'S MASTER FILE AND WAS UNABle TO locATE A NOTIFICATION letter TO THE OFFENDER OR HiS VISITOrs FROM STATEViLle CORRECTIONAL CENTER INDICATING THAT A STOP ORDER HAD BEEN ISSUED."

27. THE ILLINOIS ADMINISTRATIVE CODE, 20 ILL. ADM. CODE 525.20, WHICH IDOC IS REQUIRED TO FOLLOW STATES, "WRITTEN NOTIFICATION OF TEMPORARY OR PERMANENT RESTRICTION OF VISITING PRIVILEDGES SHALL BE SENT TO THE VISITOR AND TO THE OFFENDER," 525.20 (K).

28. 20 ILL. ADM. CODE 525.20 (1) STATES, "NOTICES OF PERMANENT RESTRICTIONS SHALL INFORM VISITORS AND OFFENDERS THAT THEY MAY REQUEST THAT THE CHIEF ADMINISTRATIVE OFFICER REVIEW THE DECISION AFTER A SIX MONTH PERIOD. AFTER THE INITIAL SIX MONTH REVIEW, PERMANENT RESTRICTIONS SHALL BE REVIEWED BY THE CHIEF ADMINISTRATIVE OFFICER ON AN ANNUAL BASIS UPON REQUEST OF THE OFFENDERS OR THEIR VISITORS. WRITTEN NOTIFICATION OF THE DECISION SHALL BE SENT TO THE VISITOR AND TO THE OFFENDER."

29. 20 ILL. ADM. CODE 525.20 (b) STATES, "AN OFFENDER SHALL SUBMIT A LIST OF PROPOSED VISITORS TO DESIGNATED FACILITY STAFF. A VISITING LIST SHALL BE ESTABLISHED AFTER VERIFICATION, REVIEW, AND APPROVAL BY THE CHIEF ADMINISTRATIVE OFFICER."

30. HAVING ESTABLISHED RULES PURSUANT TO STATUTORY AUTHORITY, AN ADMINISTRATIVE AGENCY IS BOUND BY THESE RULES AND MAY NOT VIOLATE THEM. THE SAME RULES OF CONSTRUCTION APPLY TO ADMINISTRATIVE RULES AND REGULATIONS AS ARE APPLIED BY

COURTS IN THE CONSTRUCTION OF STATUTES

31. UPON INFORMATION AND BELIEF, IF THE MEANING OF A STATUTE IS
CLEAR AND UNAMBIGUOUS, ANY APPLICATION INCONSISTENT WITH
THAT MEANING WILL HAVE NO WEIGHT, MUST BE VOID, AND
UNENFORCABLE.

32. ON NUMEROUS OCCASSIONS PLAINTIFF, SARAH VOLK, AND MARY
TRAINAUSKAS WROTE TO STATEVILLE, PONTIAC, DEFENDANTS JACOB,
COX, AND JACKSON REGARDING THE ABOVE STATED "STOP ORDER",
BUT RECEIVED NO RESPONSE.

33. PLAINTIFF, SARAH VOLK, AND MARY TRAINAUSKAS ALSO WROTE TO
IDOC DIRECTOR ROB JEFFREYS, DEPUTY DIRECTOR HARDY, AND GOVERNOR
PRITZGER REGARDING THE ABOVE STATED "STOP ORDER", BUT RECEIVED
NO RESPONSE.

34. DURING one of DEFENDANT JACKSON'S EXTREMELY RARE CellHouse
TOURS PLAINTIFF STOPPED HIM AND REQUESTED HIS HELP AND
INTERVENTION WITH THIS "STOP ORDER". DEFENDANT JACKSON TOLD
PLAINTIFF THAT HE IS NOT INCLINED TO HELP.

35. DURING one of DEFENDANT COX'S EXTREMELY RARE CellHouse
TOURS PLAINTIFF STOPPED HIM AND REQUESTED HIS HELP AND
INTERVENTION WITH THIS "STOP ORDER". DEFENDANT COX TOLD

11

PLAINTIFF THAT HE would NOT GET INVOLVED.

36. Sometime in 2020 (SPECIFIC DATE IS CURRENTLY UNKNOWN) SARAH Volk WAS AGAIN Allowed TO HAVE VIDEO VISITS WITH PLAINTIFF.

37. PLAINTIFF WAS Allowed VIDEO VISITS WITH SARAH Volk FROM Sometime IN 2020 — MAY 2021 WHEN WITHOUT REASON, CAUSE OR NOTICE SHE WAS AGAIN BARRED FROM SCHEDULING AND HAVING VIDEO VISITS WITH PLAINTIFF.

38. MARY TRAINAUSKAS WAS UNABLE TO HAVE ANY VIDEO VISITS WITH PLAINTIFF DUE TO SOFTWARE INCAPATABILITY.

39. ON 1/13/21 PLAINTIFF WROTE TO Counselor JONSSON IN PONTIAC FOR ASSISTANCE LIFTING THE STOP ORDER. SHE REPLIED, "THE WARDEN AT STATEVILLE WON'T HAVE AUTHORITY OVER THE RESTRICTION SINCE YOU ARE HOUSED HERE. WHEN I SPOKE WITH JACKSON'S SECRETARY, I WAS INFORMED THAT HE IS THE ONE THAT CAN LIFT IT."

## STATE-CREATED LIBERTY INTEREST

40. THE FOURTEENTH AMENDMENT PROVIDES THAT NO STATE SHALL "DEPRIVE ANY PERSON OF LIFE, LIBERTY OR PROPERTY WITHOUT DUE PROCESS OF LAW."

41. A LIBERTY INTEREST MAY ARISE FROM THE CONSTITUTION ITSELF, BY REASON OF GUARANTEES IMPLICIT IN THE WORD "LIBERTY", OR IT MAY ARISE FROM AN EXPECTATION OR INTEREST CREATED BY STATE LAWS OR POLICIES.

42. A STATE CREATES A PROTECTED LIBERTY INTEREST WHEN IT PLACES SUBSTANTIVE LIMITATIONS ON OFFICIAL DISCRETION. THE MOST COMMON WAY A STATE CREATES SUCH AN INTEREST IS BY ADOPTING REGULATIONS WHICH ESTABLISH SUBSTANTIVE PREDICATES TO GOVERN OFFICIAL DECISIONMAKING AND BY MANDATING THE OUTCOME TO BE REACHED UPON A FINDING THAT THE RELEVANT CRITERIA HAVE BEEN MET. THERE MUST BE PARTICULARIZED STANDARDS OR CRITERIA TO GUIDE THE STATE'S DECISIONMAKERS, AND THE CRITERIA MUST SERVE TO LIMIT DISCRETION. THE REGULATIONS ALSO MUST CONTAIN "EXPLICITLY MANDATORY LANGUAGE" SUCH AS THE WORDS "SHALL" OR "MUST", AND "WILL", WHICH BECOME SPECIFIC DIRECTIVES TO THE DECISIONMAKER, THAT IF THE REGULATIONS' SUBSTANTIVE PREDICATES ARE PRESENT, A PARTICULAR OUTCOME MUST FOLLOW.

43. ALTHough A SEARCH FoR MANDATORY lANGUAGe NECESSARILY FOCUSES ON WORDS SUCH AS "SHAll", "MUST", AND "Will", MERE USE oF THESE WORDS IS INSUFFICIENT. RATHER, THE SEARCH IS FoR RElevant MANDATORY LANGUAGE THAT EXPRESSLY REquires THE DECISIONMAKER TO APPLY CERTAIN SUBSTANTIVE PREDICATES IN DETERMINING WHETHER AN INMATE MAY BE DEPRIVED OF THE PARTICULAR INTEREST IN QUESTION.

44. THE illinois ADMINISTRATIVE CODE (20. ill. ADM. CODE 525.20) AS STATED IN PARAGRAPHS 27-29, CREATES A LIBERTY INTEREST IN VISITATION By VIRTUE OF ITS MANDATORY LANGUAGE "SHAll" AND SPECIFIC SUBSTANTIVE PREDICATES FOR OFFICIAL ACTION.

45. THE UNITED STATES SUPREME COURT HAS FOUND THAT, WHERE A STATE ENACTMENT PROVIDES MANDATORY LANGUAGE IN CONNECTION WITH SUBSTANTIVE PREDICATES THE ENACTMENT CREATES A LIBERTY INTEREST WHICH REQUIRES PRISON ADMINISTRATORS TO AFFORD DUE PROCESS TO THOSE WHOM IT AFFECTS.

46. WHERE THE STATE HAS USED MANDATORY LANGUAGE AS STATED IN PARAGRAPH 43 ABOVE, AND HAS ALSO FURNISHED THE DECISIONMAKERS WITH SUBSTANTIVE CRITERIA UPON WHICH TO BASE THEIR DECISION, THE STATE HAS CREATED A LIBERTY INTEREST IN PRISON VISITATION.

47. Upon information and belief, the constitutional concept of liberty encompasses the right for plaintiff to have visits with his immediate family - his wife and mother. And any arbitrary or capricious denial of that state-created liberty interest creates an atypical and significant hardship for plaintiff and his family especially when that denial has spanned many years.

## DUE PROCESS

48. Procedural protections of the due process clause are triggered when a state action implicates a constitutionally protected interest in life, liberty, or property.

49. Illinois law holds that, "Having once established rules pursuant to statutory authority, an administrative agency is bound by these rules and may not violate them." Since 20 Ill. Adm. Code 525. 20 was established pursuant to statutory authority, the defendants, and IDOC are bound under Illinois law to follow it.

15

50. THE FOURTEENTH AMENDMENT PROTECTS AN INDIVIDUAL FROM DEPRIVATION OF LIFE, LIBERTY OR PROPERTY WITHOUT DUE PROCESS OF LAW. AND THOSE WHO SEEK TO INVOKE ITS PROTECTION MUST ESTABLISH THAT ONE OF THOSE INTERESTS IS AT STAKE.

51. A PROCEDURAL DUE PROCESS ANALYSIS ADDRESSES TWO QUESTIONS. THE FIRST ASKS WHETHER THERE EXISTS A LIBERTY INTEREST WHICH HAS BEEN INTERFERED WITH BY THE STATE; THE SECOND EXAMINES WHETHER THE PROCEDURES ATTENDANT UPON THAT DEPRIVATION were Constitutionally Sufficient.

52. A Prisoner's Liberty interest is NOT limited TO WHATEVER A STATE CHOOSES TO Bestow UPON HIM. RATHER, A PRISONER Retains A SIGNIFICANT RESIDUUM OF CONSTITUTIONALly PROTECTED liberty Following HIS INCARCERATION INDEPENDENT OF ANY STATE LAW. A PRISONER IS NOT WHOLLY STRIPPED OF CONSTITUTIONAL PROTECTIONS WHEN IMPRISONED FOR A CRIME. THERE IS NO IRON CURTAIN DRAWN BETWEEN THE CONSTITUTION AND THE PRISONS OF THIS COUNTRY. A PRISONER MAY NOT BE DEPRIVED OF LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF LAW.

53. STATE LAW CAN ESTABLISH A PROTECTIBLE LIBERTY INTEREST, OR THE CONSTITUTION CAN CREATE A LIBERTY INTEREST WHEN A CONDITION OR RESTRAINT IS SO EGREGIOUS AS TO IMPLICATE THE DUE PROCESS CLAUSE ITSELF.

54. THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT HAS A PROCEDURAL Component AND A SUBSTANTIVE one.

55. PROCEDURAL DUE PROCESS REQUIRES THAT THE GOVERNMENT PROVIDE DUE PROCESS PRIOR TO MAKING A DECISION TO DEPRIVE one of LIFE, LIBERTY, OR PROPERTY. THE GOAL OF PROCEDURAL DUE PROCESS IS TO ASSURE FAIRNESS IN THE DECISION-MAKING PROCESS AND TO ASSURE THE INDIVIDUAL AFFECTED IS PROVIDED THE ADEQUATE OPPORTUNITY TO BE HEARD IN A MEANINGFUL AND Timely manner PRIOR TO THE DEPRIVATION.

56. SUBSTANTIVE DUE PROCESS SERVES THE GOAL OF PREVENTING GOVERNMENTAL POWER FROM Being USED FOR PURPOSES OF OPPRESSION, REGARDless OF THE FAIRNESS OF THE PROCEDURES USED. IT SERVES AS A CHECK on legislative enactments THOught TO INFRINGE ON A FUNDAMENTAL RIGHT NOT EXPLICITLY PROTECTED By THE Bill of Rights, OR AS A LIMITATION ON OFFICIAL MISCONDUCT WHICH, NOT EXPLICITLY INFRINGING Upon A FUNDAMENTAL Right, IS SO CONSCIENCE SHOCKING AND OPPRESSIVE IT RISES TO A Level OF SUBSTANTIVE DUE PROCESS VIOLATION.

17

57. MANY PROCEDURAL DUE PROCESS CLAIMS ARE GROUNDED IN VIOLATIONS OF STATE-CREATED LIBERTY INTERESTS AS IN PLAINTIFF'S CASE - RIGHTS THAT DO NOT EXPLICITLY ENJOY CONSTITUTIONAL STANDING. BUT, THE RIGHT TO A HEARING OR NOTICE PRIOR TO THE DEPRIVATION IS OF CONSTITUTIONAL STATURE AND DOES NOT DEPEND UPON THE NATURE OF THE RIGHT VIOLATED. THE RATIONALE FOR GRANTING PROCEDURAL PROTECTION TO AN INTEREST THAT DOES NOT EXPLICITLY RISE TO THE LEVEL OF A FUNDAMENTAL RIGHT LIES AT THE VERY HEART OF CONSTITUTIONAL DEMOCRACY- THE PREVENTION OF ARBITRARY ABUSE OF GOVERNMENT POWER.

58. A PRISON OFFICIAL'S MOTIVATION, OR LACK THEREOF, FOR DENYING AN INMATE OF DUE PROCESS IS IRRELEVANT; A CONSTITUTIONAL VIOLATION RESULTS EVEN IF THE DECISION TO DEPRIVE A PROTECTED OR STATE-CREATED liberty INTEREST WAS MADE WITH THE BEST INTENTION OR MOTIVE.

59. NOTICE POSTDEPRIVATION OF A PROTECTED LIBERTY INTEREST CANNOT CURE PROCEDURAL OR SUBSTANTIVE DUE PROCESS VIOLATIONS; AS DUE PROCESS AFFORDS PLAINTIFF THE RIGHT TO BE NOTIFIED WITHIN A REASONABLE AMOUNT OF TIME AND THE OPPORTUNITY TO RESPOND AND/OR APPEAL SAID DEPRIVATION.

60. THE Illinois DEPARTMENT OF Corrections ("IDOC") HAS CREATED Rules, Regulations, Policies, AND PROCEDURES CALLED ADMINISTRATIVE DIRECTIVES ("AD's).

61. THESE "AD's SERVE AS Rules, Regulations, Policies, AND PROCEDURES THAT "IDOC" EMPLOYEES MUST OR SHALL Follow AND ABIDE BY.

62. THE AD 05.01.106 PERTAINS TO VISITATION AND CLOSELY PARALLELS THE LANGUAGE OF 20, II. ADM. CODE 525.20.

63. AD 05.01.106 CONTAINS MANDATORY LANGUAGE WHICH STATES THAT ANY WITNESS TO AN INCIDENT INVOLVING A VISITOR SHALL IMMEDIATELY PREPARE AN INCIDENT REPORT. THE CHIEF ADMINISTRATIVE OFFICER MUST THEN REVIEW THE REPORT AND SHALL DETERMINE WHETHER THE INCIDENT WILL RESULT IN A WRITTEN WARNING OR A TEMPORARY OR PERMANENT RESTRICTION. AFTER MAKING THE DETERMINATION, THE OFFICER SHALL PREPARE A LETTER TO THE VISITOR. FINALLY THE AD REQUIRES THAT ANY PERMANENT RESTRICTIONS SHALL BE AUTOMATICALLY REVIEWED BY THE CHIEF ADMINISTRATIVE OFFICER WITHIN 6 MONTHS THEN EVERY TWELVE MONTHS THEREAFTER UNTIL IT IS LIFTED.

64. UPON INFORMATION AND BELIEF, BECAUSE ILLINOIS AND IDOC HAVE CREATED A SET OF CRITERIA FOR THE WITHDRAWL OF VISITATION AND HAS JOINED THOSE CRITERIA WITH MANDATORY LANGUAGE THEY HAVE ESTABLISHED A LIMITED LIBERTY INTEREST THAT CAN ONLY BE RESTRICTED WITH ADHERENCE TO DUE PROCESS.

65. UPON INFORMATION, AND BELIEF, A 3-PART BALANCING TEST SHOULD BE EMPLOYED TO DETERMINE IF PLAINTIFF'S, SARAH VOLK'S AND MARY TRAINAUSKAS' DUE PROCESS RIGHTS WERE VIOLATED OR COMPROMISED BY THE DEFENDANTS. FIRST, THE PRIVATE INTEREST THAT WILL BE AFFECTED; SECOND, THE RISK OF AN ERRONEOUS DEPRIVATION OF SUCH INTEREST THROUGH THE PROCEDURES USED OR DISREGARDED AS IN PLAINTIFF'S CASE; THIRD, THE FUNCTION INVOLVED AND THE FISCAL AND ADMINISTRATIVE BURDENS THAT THE ADDITIONAL PROCEDURAL REQUIREMENT WOULD ENTAIL.

66. THE FIRST FACTOR IS OF SIGNIFICANT IMPORTANCE - THE RIGHT TO VISIT WITH HIS FAMILY. THE SECOND FACTOR CALLS FOR THE REVIEW OF ACTUAL PROCEDURES REQUIRED BY THE "AP". IN PLAINTIFF'S CASE FORMAL NOTICE BY DEFENDANT JACOB SHALL BE ISSUED IN WRITING TO PLAINTIFF, SARAH VOLK, AND MARY TRAINAUSKAS OF ANY VISITATION RESTRICTION AND THAT THE DECISION MAY BE REVIEWED AFTER THE PASSAGE OF SIX MONTHS. WHEN THIS REVIEW OCCURS THE STATE

Allows THE PLAINTIFF AND THE RESTRICTED PARTY(S) THE OPPORTUNITY TO PRESENT HIS OR HER SIDE OF THE STORY EITHER IN WRITING OR IN PERSON. IF THE SIX MONTH DOES NOT RESULT IN THE RESTRICTION BEING REMOVED, THE RESTRICTION IS AUTOMATICALLY REVIEWED EVERY TWELVE MONTHS UNTIL IT IS REMOVED. THE FINAL FACTOR IS NEGLIBLE AS NO ADDITIONAL COST WOULD BE ASSOCIATED WITH REVERSING ANY VISITATION RESTRICTION IMPOSED UPON SARAH VOLK AND MARY TRAINAUSKAS.

67. UPON INFORMATION AND BELIEF, NO SIX MONTH OR TWELVE MONTH REVIEW OCCURRED WHICH VIOLATED DUE PROCESS.

68. UPON INFORMATION AND BELIEF, NEITHER PLAINTIFF, SARAH VOLK NOR MARY TRAINAUSKAS WERE ALLOWED THE OPPORTUNITY TO BE HEARD - TO PRESENT THEIR SIDE OF THE STORY.

69. IT IS REQUIRED PURSUANT TO AD 05.01.106, 20 ILL.ADM. CODE 525.20 THAT DEFENDANT JACOB NOTIFY PLAINTIFF, SARAH VOLK, AND MARY TRAINAUSKAS OF ANY VISITATION RESTRICTION WITHIN A REASONABLE AMOUNT OF TIME. THIS DID NOT OCCUR. SUCH AN ACTION IS IN VIOLATION OF DUE PROCESS.

70. PLAINTIFF, SARAH Volk, AND MARY TRAINAUSKAS, upon LEARNING OF THE "STOP ORDER" ON 9/27/19, WROTE TO DEFENDANTS COX, JACKSON, AND JACOB AND REQUESTED THAT ANY/ALL "STOP ORDER" OR VISITATION RESTRICTION BE LIFTED. NEITHER PLAINTIFF, SARAH Volk, NOR MARY TRAINAUSKAS HAD Been NOTIFIED IN WRITING BY ANY of THE DEFENDANTS OF ANY VISITATION RESTRICTION AT THIS TIME.

71. ON 1/28/21 DEFENDANT COX FINALLY RESPONDED IN WRITING TO PLAINTIFF, SARAH Volk, AND MARY TRAINAUSKAS. IN HIS LETTER He STATES, "OR RECORDS INDICATE THAT you ARE ON A PERMANENT VISIT RESTRICTION DUE TO AN INCIDENT AT STATEVIlle Correctional CENTER IN July 2018." HE THEN went ON TO DIRECT All PARTIES TO CONTACT THE WARDEN of STATEVille FOR RESTORATION OF VISITATION.

72. DEFENDANT COX's letter WAS Received SEVERAL years AFTER THE DEPRIVATION OF A STATE-CREATED LIBERTY INTEREST. NOT ONLY DID IT Come years LATER IT CONTAINS ERRORS AND INACCURACIES. THE Alleged INCIDENT OCCURRED JUNE 21, 2018, NOT IN July 2018 AS He CLAIMS; AND THere WAS NO PERMANENT VISIT RESTRICTION ISSUED OR ON FILE - ONLY A "STOP ORDER".

22

73. ON 3/25/21 DEFENDANT JACOB FINALLY RESPONDED TO A letter FROM PLAINTIFF'S WIFE STATING, "I AM IN RECEIPT OF YOUR RECENT Correspondence Requesting APPROVAL TO VISIT WITH INMATE BRIAN TRAINAUSKAS. I REGRET TO INFORM YOU THAT VISITATION PRIVILEGES WILL NOT BE APPROVED AT THIS TIME FOR THIS INMATE. HOWEVER, YOU MAY REQUEST ANOTHER REVIEW OF THIS IN WRITING 1 year FROM THE DATE OF THIS LETTER."

74. NOWHERE IN DEFENDANT JACOB'S 3/25/21 LETTER DOES HE STATE: THE TYPE OF VISITATION RESTRICTION, ITS DURATION, PARTIES INVOLVED, OR REASON FOR SAID RESTRICTION WHICH IS REQUIRED PURSUANT TO 20 ill. ADM. CODE 525.20 OR AD 05.01.106 AND DUE PROCESS.

75. DEFENDANT JACOB'S LETTER WAS SENT years AFTER THE ALLEGED INCIDENT AT STATEVILLE ON 6/21/18. DURING THE TIMEFRAME OF 6/21/18 - 3/25/21 PLAINTIFF, SARAH VOLK, AND MARY TRAINAUSKAS WERE DEPRIVED THE CONSTITUTIONALLY PROTECTED DUE PROCESS RIGHTS AFFORDED TO THEM TO APPEAL THE ACTIONS OF THE DEFENDANTS IN THIS COMPLAINT. FURTHERMORE, Reviews OF VISITATION RESTRICTIONS ARE TO BE AUTOMATIC, NOT UPON REQUEST AS DIRECTED IN THE "AD" AND 20 ill. ADM. CODE 525.20.

76. ON 3/25/21 DEFENDANT JACOB RESPONDED TO A letter FROM MARY TRAINAUSKAS. HE REPLIED IN WRITING, "I AM IN RECEIPT OF YOUR letter IN WHICH YOU REQUESTED TO VISIT WITH THE ABOVE-MENTIONED INMATE. PLEASE BE ADVISED YOU ARE GRANTED VISITATION WITH INMATE BRIAN TRAINAUSKAS EFFECTIVE MARCH 25, 2021. YOUR VISITATION IS GRANTED ONLY FOR INMATE BRIAN TRAINAUSKAS AT STATEVILLE CORRECTIONAL CENTER. IF YOU WISH TO VISIT A DIFFERENT INMATE AND/OR A DIFFERENT FACILITY, YOUR REQUEST MUST BE SUBMITTED TO THE ASSISTANT WARDEN OF OPERATIONS WHERE THE INMATE IS HOUSED."

77. BOTH MARY TRAINAUSKAS AND SARAH VOLK HAD VISITATION RESTRICTIONS IMPOSED UPON THEM FOR AN Alleged INCIDENT AT STATEVILLE ON 6/24/18. UPON INFORMATION AND BELIEF, DEFENDANTS JACOB, COX, AND JACKSON CANNOT REMOVE SAID VISITATION RESTRICTION WITHOUT REMOVING THE VISITATION RESTRICTION ON SARAH VOLK WITHOUT TRIGGERING A VIOLATION OF IDOC "AD", 20 Ill. ADM. CODE 525, AND DUE PROCESS.

<u>Count II</u>

PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS
WERE VIOLATED AND CONTINUES TO BE VIOLATED WHEN
DEFENDANTS JACOB, COX, AND JACKSON IMPOSED AN
ATYPICAL AND SIGNIFICANT HARDSHIP UPON PLAINTIFF
RESULTING IN <u>CRUEL AND UNUSUAL PUNISHMENT.</u>

78. PLAINTIFF REPEATS THE ALLEGATIONS IN PARAGRAPHS 1
THROUGH 77 AS IF FULLY SET FORTH HEREIN.

79. THE UNITED STATES SUPREME COURT HAS NOTED THAT
IF VISITATION RESTRICTIONS ARE APPLIED IN AN ARBITRARY
MANNER TO A PRISONER IT BECOMES A CAUSE OF ACTION
UNDER THE EIGHTH AMENDMENT.

80. PRISON VISITS HAVE LONG BEEN RECOGNIZED AS CRITICALLY
IMPORTANT TO INMATES AND THEIR FAMILIES AS WELL AS TO
THE COMMUNITIES TO WHICH THE INMATE WILL ULTIMATELY
RETURN TO. WITHOUT VISITATION A PRISONER WILL BE
ENTIRELY CUT OFF FROM HIS FAMILY WHO ARE HIS ONLY
CONTACT WITH THE OUTSIDE WORLD.

25

81. DEFENDANTS JACOB, COX, AND JACKSON HAVE CONTINUOUSLY DENIED PLAINTIFF ANY MEANINGFUL, IN-PERSON, AND NON-CONTACT VISITS WITH SARAH VOLK, HIS WIFE, SINCE 6/22/18 - CURRENT DATE.

82. DEFENDANTS JACOB, COX, AND JACKSON HAVE CONTINUOUSLY DENIED PLAINTIFF ANY MEANINGFUL, IN-PERSON, AND NON-CONTACT VISITS WITH MARY TRAINAUSKAS, HIS MOTHER FROM 6/22/18 - 5/13/21.

83. EVEN THOUGH DEFENDANT JACOB FINALLY REMOVED ALL VISITATION RESTRICTIONS ON MARY TRAINAUSKAS, HE CHOSE TO ONLY RESTORE / ALLOW VISITS FOR HER AND PLAINTIFF AT STATEVILLE, WHICH PLAINTIFF HAS NOT RESIDED AT SINCE 6/21/18.

84. UPON INFORMATION AND BELIEF, DEFENDANT JACOB'S DECISION TO ONLY ALLOW VISITATION WITH PLAINTIFF AND HIS MOTHER AT STATEVILLE ONLY, SHOULD BE CONSIDERED ARBITRARY, PUNITIVE AND CAPRICIOUS BECAUSE PLAINTIFF RESIDES AT PONTIAC AND DEFENDANT JACOB WAS WELL AWARE OF THAT FACT. FURTHERMORE HIS DECISION WENT CONTRARY TO IDOC AD AND 20 ill. ADM. CODE.

85. DEFENDANTS COX AND JACKSON BOTH RECEIVED COPIES OF DEFENDANT JACOB'S letter RESTORING VISITATION FOR MARY TRAINAUSKAS, yet THEY CONTINUOUSLY REFUSED TO ACKNOWLEDGE IT AND DENIED VISITATION UNTIL 5/14/21.

86. ON 5/14/21 PLAINTIFF WAS FINALLY Allowed IN-PERSON VISITATION AT PONTIAC WITH MARY TRAINAUSKAS.

87. PLAINTIFF'S LAST VIDEO VISIT WITH SARAH VOLK WAS ON 5/1/21. SHORTLY THEREAFTER WITHOUT REASON, CAUSE, OR JUSTIFICATION THOSE VISITS WERE Also RevoKED.

88. UPON INFORMATION AND BELIEF, THE DECISION BY THE DEFENDANTS TO WITHHOLD All VISITATION IN Any/All FORMS BETWEEN PLAINTIFF AND HIS WIFE, SARAH VOLK MUST BE CONSIDERED ARBITRARY, PUNITIVE, AND CAPRICIOUS.

89. PLAINTIFF WROTE TO WARDENS AT PONTIAC AND STATEVILLE REGARDING THE WITHHolding OF VIDEO VISITATION WITH SARAH VOLK. HE RECEIVED NO RESPONSE.

90. PLAINTIFF SUBMITTED GRIEVANCES REGARDING THE WITHHolding OF All FORMS OF VISITATION WITH HIS WIFE; RECEIVED NO RESPONSE THEN CHOSE TO GO ON A HUNGER STRIKE IN ORDER TO BRING ATTENTION TO THIS SITUATION.

27

91. WHILE ON HUNGER STRIKE PLAINTIFF REPEATEDLY ASKED TO SPEAK WITH DEFENDANT COX OR DEFENDANT JACKSON. BOTH WERE NOTIFIED BY PLAINTIFF AND PONTIAC STAFF, BUT BOTH DEFENDANTS CHOSE TO IGNORE PLAINTIFF AND HIS HUNGER STRIKE.

92. ON 6/2/21 PLAINTIFF WAS WRIT INTO WILL COUNTY COURTHOUSE FOR POST-CONVICTION MATTERS. PLAINTIFF NOTIFIED THE CIRCUIT COURT JUDGE OF THE ISSUES LISTED HEREIN.

93 ON 7/7/21 A MEMBER OF PONTIAC'S INTEL STAFF CALLED DEFENDANT JACOB AT STATEVILLE REGARDING THE VISITATION ISSUES HEREIN. DEFENDANT JACOB REFUSED TO ALLOW VIDEO VISITATION, NON-CONTACT VISITATION, OR IN-PERSON VISITATION FOR PLAINTIFF AND HIS WIFE.

94. UPON INFORMATION AND BELIEF, THE COMPLETE DENIAL OF ANY/ALL FORMS OF VISITATION BETWEEN PLAINTIFF AND HIS WIFE MUST BE CONSIDERED A DRASTIC DEPARTURE FROM NORMAL PRISON LIFE AND MUST BE CONSIDERED TO BE CRUEL AND UNUSUAL PUNISHMENT.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

95. PLAINTIFF HAS A LONG AND WELL DOCUMENTED HISTORY OF MENTAL ILLNESSES, ALONG WITH EXTENSIVE, CHRONIC PHYSICAL ILLNESSES INCLUDING BUT NOT LIMITED TO A RARE FORM OF BLOOD CANCER, AND CONGESTIVE HEART FAILURE.

96 WITHOUT BEING ABLE TO SEE, HOLD, KISS, OR VISIT WITH HIS MOTHER AND WIFE PLAINTIFF HAS DEVELOPED AN EXTREME FEELING OF DISASSOCIATION, DEPRESSION, ELEVATED LEVELS OF ANXIETY, ANTISOCIAL BEHAVIOR, PERIODS OF PSYCHOSIS AND SELF-HARMING BEHAVIOR. PLAINTIFF'S WIFE SARAH VOLK HAS BEEN EXPERIENCING MANY OF THE SAME EMOTIONAL DISTRESS.

97. UPON INFORMATION AND BELIEF, PONTIAC CAN EASILY ACCOMODATE NON-CONTACT VISITATION AND VIDEO VISITS BETWEEN PLAINTIFF AND HIS WIFE, BUT THE DEFENDANTS HAVE CONTINUOUSLY CHOSEN TO DENY THEM FOR NO LEGITIMATE PENOLOGICAL RATIONALE, BUT TO INFLICT PAIN AND DISTRESS UPON PLAINTIFF AND HIS FAMILY.

# IRISH CITIZENSHIP

98. SINCE PLAINTIFF'S MOTHER MARY TRAINAUSKAS WAS BORN IN IRELAND, PLAINTIFF IS AN IRISH CITIZEN AS WELL AS HER.

99. UPON INFORMATION AND BELIEF, AS AN IRISH CITIZEN PLAINTIFF IS AFFORDED CERTAIN RIGHTS UNDER THE CONSTITUTION OF IRELAND.

100. PLAINTIFF, HIS MOTHER, AND HIS WIFE CONTACTED THE IRISH CONSULATE REGARDING THE ISSUES / CLAIMS HEREIN.

101. THE IRELAND CONSTITUTION ARTICLE 41 STATES AS FOLLOWS:
"1° THE STATE RECOGNISES THE FAMILY AS THE NATURAL PRIMARY AND FUNDAMENTAL UNIT GROUP OF SOCIETY, AND AS A MORAL INSTITUTION POSSESSING INALIENABLE AND IMPRESCRIPTIBLE RIGHTS, ANTECEDENT AND SUPERIOR TO ALL POSITIVE LAW."

"2° THE STATE, THEREFORE, GUARANTEES TO PROTECT THE FAMILY IN ITS CONSTITUTION AND AUTHORITY, AS THE NECESSARY BASIS OF SOCIAL ORDER, AND AS INDISPENSABLE TO THE WELFARE OF THE NATION AND THE STATE."

30

"3. 1° THE STATE PLEDGES ITSELF TO GUARD WITH SPECIAL
CARE THE INSTITUTION OF MARRIAGE, ON WHICH THE
FAMILY IS FOUNDED, AND TO PROTECT IT AGAINST
ATTACK."

102. UPON INFORMATION AND BELIEF, DEFENDANTS JACOB,
COX, AND JACKSON HAVE CONTINUOUSLY DENIED
PLAINTIFF THE MINIMUM NECESSITIES REQUIRED
TO MAINTAIN A HEALTHY FAMILY CONNECTION AND
MARRIAGE.

103. UPON INFORMATION AND BELIEF, DEFENDANTS JACOB,
COX, AND JACKSON HAVE REPEATEDLY IGNORED
PLAINTIFF'S PLEAS TO REUNITE HIM WITH HIS
FAMILY, THUS REMAINING DELIBERATELY INDIFFERENT
TO PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER
BOTH THE UNITED STATES CONSTITUTION AND THE
CONSTITUTION OF IRELAND.

## V. RELIEF REQUESTED

PLAINTIFF REQUESTS THAT THIS COURT ALLOW HIM TO RAISE STATUTORITY AUTHORITY, ADMINISTRATIVE DIRECTIVES, Along WITH HIS LIMITED LEGAL ARGUMENTS TO PROCEED, AS THEY ARE ESSENTIAL TO PROVE HIS CASE. FURTHERMORE PLAINTIFF REQUESTS THE Following RELIEF:

I. DECLARE THAT THE ACTIONS OF DEFENDANTS JACOB, COX, AND JACKSON VIOLATED PLAINTIFF'S Rights PROTECTED BY THE 8TH AND 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

II. DECLARE THAT THE ACTIONS OF DEFENDANTS JACOB, COX, AND JACKSON VIOLATED PLAINTIFF'S RIGHTS PROTECTED BY THE CONSTITUTION OF IRELAND;

III. DECLARE THAT PLAINTIFF HAS A STATE-CREATED LIBERTY INTEREST IN VISITATION WITHIN "IDOC" AND THAT DEFENDANTS JACOB, COX, AND JACKSON VIOLATED THAT RIGHT;

IV. FORCE DEFENDANTS JACOB, COX, AND JACKSON TO REMOVE, LIFT ANY VISITATION RESTRICTION IMPOSED UPON PLAINTIFF, SARAH Volk, AND MARY TRAINAUSKAS AND ALLOW THEM TO AGAIN HAVE IN-PERSON, NON-CONTACT, AND VIDEO VISITATION.

V. ENJOIN THE DEFENDANTS FROM ENGAGING IN ANY PRACTICE OR ACTION THAT WOULD CAUSE PLAINTIFF ANY FURTHER HARM, OR WOULD VIOLATE ANY OF HIS CONSTITUTIONAL RIGHTS AFFORDED TO HIM BY THE UNITED STATES AND THE IRISH CONSTITUTION;

VI. AWARD PLAINTIFF, SARAH VOLK, AND MARY TRAINAUSKAS A JUDGMENT AGAINST THE DEFENDANTS SEPARATELY AND JOINTLY, FOR COMPENSATORY AND PUNITIVE DAMAGES IN AN AMOUNT AS MAY BE AWARDED BY THE FINDER OF FACT UPON TRIAL OF THIS CASE;

VII. DECLARE THAT ANY CURRENT VISITATION RESTRICTION IMPOSED UPON PLAINTIFF, SARAH VOLK, AND MARY TRAINAUSKAS TO BE UNCONSTITUTIONAL AND THUS UNENFORCABLE;

VIII. GRANT INJUNCTIVE RELIEF IMMEDIATELY SO THAT PLAINTIFF AND SARAH VOLK MAY HAVE IN-PERSON, NON-CONTACT, AND VIDEO VISITS;

IX. GRANT ANY FURTHER RELIEF AS THIS COURT DEEM JUST AND PROPER.

SIGNED THIS 9TH DAY OF AUGUST, 2021 - Y/0061

☒ JURY DEMAND yes

33